UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| ALEX HERMOSILLA, | ) |
| Appellant, | ) |
| | ) |
| v. | ) Civil Action No. 10cv11195-NG |
| | ) |
| HILDA CRISTINA HERMOSILLA, | ) |
| Appellee, | ) |

GERTNER, D.J.

# MEMORANDUM AND ORDER
March 21, 2011

## I. INTRODUCTION

Defendant/appellant Alex Hermosilla ("Alex") appeals the Bankruptcy Court's decision that an unliquidated personal injury claim owed to his former spouse, plaintiff/appellee Hilda Cristina Hermosilla ("Cristina"), is exempt from discharge pursuant to 11 U.S.C. § 523(a)(6).

Alex's appeal presents four main arguments: First, he argues that the Bankruptcy Court lacked subject matter jurisdiction to determine the dischargeability of his debt to Cristina for her unliquidated personal injury claims. Second, he contends that the statute of limitations on her tort claims had run before she filed. Third, he asserts that Cristina waived her tort claims in a stipulation to their divorce judgment and/or that the claims are barred by res judicata because the Probate Court took Cristina's injuries into consideration when awarding alimony. Fourth, Alex argues that it was improper for the Bankruptcy Court to grant summary judgment because there still remained genuine disputes as to material facts, namely whether Cristina was actually injured and, if so, whether Alex intended to cause those injuries.

In conjunction with Alex's appeal, Cristina has submitted three motions that are now pending. First, she moves to strike Alex's appeal on the grounds that it was not timely filed as required by Federal Rule of Bankruptcy Procedure 8009 (document #11). Second, she filed a motion to dismiss Alex's appeal entirely for being procedurally defaulted and/or substantively

meritless (document #12).  Third, Cristina requests sanctions for damages and costs incurred defending against Alex's frivolous appeal (document #18).

I agree that Alex's appeal is procedurally barred for failure to comply with Bankruptcy Rule 8009.  Accordingly, I **GRANT** Cristina's motions to strike Alex's brief **(document #11)** and dismiss Alex's appeal **(document #12)** for failure to comply with Bankruptcy Rule 8009.  But while this is a procedural finding, I do have to address the merits in connection with Cristina's motion for sanctions **(document #18)**.  That motion requires that I determine whether Alex's appeal is frivolous and whether Cristina is deserving of remuneration for having to defend against it.  I so find and **GRANT** Cristina's motion for sanctions and remand the matter to the Bankruptcy court to determine the amount.

## II.   FACTUAL BACKGROUND

### A.   The Events Prior to the Underlying Bankruptcy Proceeding

Cristina and Alex were married on May 15, 2001.  Amended Joint Pretrial Statement ("JPTS") APP2 97 (document #17-12).  On July 20, 2003, the pair got into an argument, and Alex severely beat Cristina (the "Assault").  As a result of the Assault, the government filed a criminal complaint against Alex for assault and battery with a dangerous weapon.  Id.  On August 5, 2004, Alex pled sufficient facts to be found guilty; a guilty finding was entered on that same date.  Id. at APP2 97-98.  Alex received, among other things, a suspended sentence of nine months in the Essex County House of Correction.  Id. at APP2 98.

On August 18, 2003, Cristina filed for a divorce from Alex in the Probate and Family Court Department of Essex Court Superior (the "Probate Court").  Id.  The Probate Court entered a judgment of divorce nisi on September 15, 2005, which became final on December 14, 2005.

Bankr. Ct. Decision 3 (document #2-1). On February 22, 2007, the Probate Court amended the September 15, 2005, judgment to include a stipulation of the parties (the "Stipulation"), which provided in relevant part that: 1) Cristina waived all future claims to alimony and spousal support; and 2) Cristina and Alex waived "any and all claims which could have been or were presented in these divorce proceedings and post divorce proceedings in [the Probate Court]." Id.

### B. The Bankruptcy Proceeding

On February 16, 2005, Alex filed a voluntary Chapter 7 bankruptcy petition. Id. Cristina, in turn, commenced the underlying bankruptcy proceeding on May 20, 2005. Id. at 4. Cristina's complaint contained three counts seeking a judgment that the following debts allegedly owed to her by Alex were exempted from discharge: (1) spousal support pursuant to 11 U.S.C. § 532(a)(5); (2) attorney's fees and health premiums pursuant to 11 U.S.C. § 532(a)(15); and (3) unliquidated damages owed to Cristina by Alex for "willful and malicious injury" (the Assault) pursuant to 11 U.S.C. § 532(a)(6). Bankr. Compl. ¶¶ 20-28 (document #17-4). At the time Alex had filed for bankruptcy, Cristina had not yet filed a civil claim against him seeking damages for the injuries she sustained during the Assault. See Bankr. Ct. Decision 4; Bankr. Ct. Hr'g Tr. vol. 1, 7:6-12 (document #17-31). Under 11 U.S.C. § 362(c)(2), Cristina was therefore barred from filing her civil action during the pendency of Alex's bankruptcy action. See 11 U.S.C. § 362(c)(2).

On March 11, 2010, at the direction of the Bankruptcy Court, Alex and Cristina submitted an Amended Joint Pretrial Statement (the "Statement"), which included a statement of admitted facts requiring no proof, and which expressly acknowledged that the Amended Joint

Pretrial Statement would supersede the pleadings. JPTS APP2 103. The Statement provided

that the following facts were admitted:

> During [the Assault], Alex purposefully struck Cristina with great force, grabbed Cristina by the throat and struck her head repeatedly against the interior wall of the premises at which Alex and Cristina then resided and threw Cristina with such force onto a table that the table was caused to be broken.
>
> At the time Alex committed the physical acts referenced above, he intended to cause and did cause Cristina physical harm and pain and emotional fright and did cause Cristina such physical harm that she was caused to seek and obtain medical care for her injuries and did cause her such emotional harm that she was cased [sic] to seek and obtain care for her emotional condition.
>
> Cristina became indebted for services rendered to her for her physical and emotional injuries for which Alex is liable to Cristina together with the physical and emotional damages Alex caused Cristina.
>
> On July 21, 2003 a Criminal Complaint issued out of the Lynn District Court against Alex for assault and battery with a dangerous weapon and assault and battery as a result of Alex's beating of Cristina on July 20, 2003.
>
> On August 5, 2004, Alex responded to the charges and admitted sufficient facts to support a finding of guilt on the charges of assault and battery with a dangerous weapon and assault and battery . . . a guilty finding [was] entered on those findings on August 5, 2004.

Id. at APP2 97-98. The Statement identified only one issue of fact remaining to be litigated,

specifically: "Whether Alex willfully and maliciously injured Cristina and as a result owes her a

debt." Id. at APP2 99. Among the issues of law remaining to be litigated, the Statement

included: "Whether Alex's conduct [i.e., the Assault] set forth above constitute 'willful and

malicious injury' to Cristina resulting in a debt for personal injury which is non-dischargeable

under § 523(a)(6)." Id. at APP2 100.

On March 15, 2010, a few days before trial was set to commence, Cristina waived Count I (spousal support) and Count II (attorney's fees and health premiums) because they were prohibited by the facts established in her and Alex's divorce Stipulation. Bankr. Ct. Decision 4. Thus, the Bankruptcy Court was left to determine only the dischargeability of her unliquidated personal injury claim under 11 U.S.C. § 523(a)(6). Id. When the bankruptcy trial began on March 17, 2010, in lieu of opening statements, Cristina instead argued that she was entitled to summary judgment on Count III. Id. at 5. Alex responded that summary judgment was inappropriate for two reasons: First, he contended that there remained facts in dispute regarding the alleged Assault, namely whether he intended to cause Cristina injury and whether an injury did in fact result. Bankr. Hr'g Tr. vol. 2, 15:25-17:9 (document #17-32). Second, he argued that he could not be liable in tort to Cristina because she had waived all such claims in the Stipulation, and therefore there was no debt that the Bankruptcy Court could discharge. Id. at 14:6-12.

At the hearing, the Bankruptcy Court decided that, based upon the admissions of the parties, Alex did intend to injure Cristina and did in fact injure her. Id. at 18:8-15. However, the Bankruptcy Court reserved judgment on the issue of whether the Stipulation to the divorce judgment waived Cristina's right to later file a personal injury claim for injuries she sustained in the Assault. Id. at 18:15-19:3. The Bankruptcy Court instructed the parties to submit briefings on the issue. Id. at 19:3-7. On May 26, 2010, the Bankruptcy Court granted summary judgment in favor of Cristina. Bankr. Ct. Docket vol. 2, APP2 14-15 (document #17-3); see infra, Part III-C. Alex then filed the instant appeal from the Bankruptcy Court's decision on June 7, 2010.

### C. The Bankruptcy Court's Decision

The Bankruptcy Court's order granting summary judgment for Cristina on Count III of her complaint held that Alex's unliquidated debt to Cristina for her personal injury claim is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). In its decision, the Bankruptcy Court squarely rejected all of the arguments that Alex submitted in his brief opposing Cristina's motion for summary judgment.

First, the Bankruptcy Court observed that Alex's argument that the statute of limitations for Cristina's tort action had run was completely contradicted by a provision of the Bankruptcy Code that expressly calls for tolling during the pendency of a debtor's bankruptcy. Bankr. Ct. Decision 10-11; <u>see also</u> 11 U.S.C. §§ 108©, 362(c)(2); Mass. Gen. Laws ch. 260, § 2A. Next, the Bankruptcy Court dismissed Alex's assertion that Cristina's tort claims were barred by res judicata and/or waived by the Stipulation, noting that the Supreme Judicial Court of Massachusetts ("SJC") had rejected the exact argument that Alex set forth. Bankr. Ct. Decision 11-12; <u>see also</u> Mass. Gen. Laws ch. 215, §§ 3, 6; <u>Heacock v. Heacock</u>, 402 Mass. 21 (1988). Finally, the Bankruptcy Court rejected Alex's contention that the pleadings were insufficient to support a grant of summary judgment, finding that the facts admitted in the Statement established all the elements necessary for discharge under section 523(a) of the Bankruptcy Code. Bankr. Ct. Decision 12-18 (citing <u>Kawaauhau v. Geiger</u>, 523 U.S. 57 (1998); <u>Grogan v. Garner</u>, 498 U.S. 279 (1991); <u>Printy v. Dean Witter Reynolds, Inc.</u>, 110 F.3d 853 (1st Cir. 1997)); <u>see also</u> 11 U.S.C. § 523(a)(6). The Bankruptcy Court therefore granted Cristina's motion for summary judgment.

Having addressed each of Alex's arguments in turn, the Bankruptcy Court commented that Alex's defenses had no basis in fact or law and likely warranted sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011(b). Bankr. Ct. Decision 3; see also Fed. R. Bankr. P. 9011(b). However, the Bankruptcy Court was barred from imposing such sanctions without first providing Attorney Baker, Alex's counsel, notice and a reasonable opportunity to respond. Bankr. Ct. Decision 20; see also Fed. R. Bankr. P. 9011©. Therefore, the Bankruptcy Court instructed Attorney Baker to submit a brief explaining why he should not be sanctioned. Id. at 20. Ultimately, the Bankruptcy Court suspended consideration of the Order to Show Cause pending the resolution of Alex's appeal in this Court. Id.

### III.  STANDARD OF REVIEW

Ordinarily, a district court reviews a bankruptcy court's conclusions of law de novo, and its findings of facts pursuant to a "clearly erroneous" standard. Stoehr v. Mohamed, 244 F.3d 206, 207-08 (1st Cir. 2001). However, in cases where the bankruptcy court granted summary judgment, the district court must conduct a de novo review of all the issues. Id.; In re Varrasso, 37 F.3d 760, 762-63 (B.A.P. 1st Cir. 2001); see also Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56. A grant of summary judgment is appropriate when "there is no genuine issue as to any material fact and. . . . the moving party is entitled to judgment as a matter of law." Cont'l Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991). The court does not weigh the evidence, but instead determines whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A trial worthy issue is not established by "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). The court must view the record in the light

most favorable to the non-moving party, accepting all reasonable inferences favoring that party. Cont'l Cas., 924 F.2d at 373.

IV.  DISCUSSION

Alex's appeal is subject to dismissal because he did not submit his supporting brief within fourteen days of when his appeal was docketed, as required by Federal Rule of Bankruptcy Procedure 8009.  Moreover, Alex's appeal is so divorced from proper factual or legal support that it warrants the imposition of sanctions pursuant to Federal Rule of Bankruptcy Procedure 8020.  First, Alex argues that the Bankruptcy Court lacked subject matter jurisdiction to determine the dischargeability of his debt to Cristina because she has not yet reduced her personal injury claims to judgment.  Second, Alex contends that he could not possibly be indebted to Cristina because the statute of limitations on her tort claims has run.  Third, Alex asserts that Cristina waived her tort claims in the Stipulation to the divorce judgment, and/or that the claims are barred by the doctrine of res judicata because the Probate Court took Cristina's injuries into consideration when awarding alimony.  Fourth, Alex claims that it was improper for the Bankruptcy Court to grant summary judgment, because there still remained genuine disputes as to material facts, specifically, whether Cristina was injured and, if so, whether Alex intended to cause those injuries.  As will be explained below, each of these arguments is completely erroneous, as the Bankruptcy Court already found.

A.  **Rule 8009**

Federal Rule of Bankruptcy Procedure 8009 ("Rule 8009") instructs that "[u]nless the district court or the bankruptcy appellate panel by local rule or by order excuses the filing of briefs or specifies different time limits . . . [the] appellant shall serve and file a brief within 14

days after entry of the appeal on the docket." Fed. R. Bankr. P. 8009(a)(1).  Although neither the First Circuit nor any District of Massachusetts court has issued an opinion directly on point, most other courts in the First Circuit believe that the decision to dismiss bankruptcy appeals for failure to comply with Rule 8009 is discretionary.  See, e.g., Balles v. Sturgill, 2009 WL 690079, at *1 (D.N.H. 2009) (indicating that but for confusion as to instructions on the docket, appellant's appeal would have been dismissed for failure to comply with Rule 8009); Wiscovitch-Rentas v. Pharm. Processes, 2009 WL 693178, at *1 (D.P.R. 2009) (dismissing appeal for failure to file a brief or request an extension of time to do so within the time allotted by Rule 8009(a)); Rodriguez-Quesada v. U.S. Trustee, 222 B.R. 193, 199 (D.P.R. 1998) (holding that "it is proper to dismiss an appellant's appeal for failure to file a brief or request an extension within the time allotted by the Bankruptcy Rules"); In re Cumberland Inv. Corp., 133 B.R. 275, 279 (D.R.I. 1991) ("The time limitations imposed by Rule 8009 are not jurisdictional, and hence the district court is not required to automatically dismiss the appeal of a party who has failed to meet those deadlines.") (quoting In re Beverly Mfg. Corp., 778 F.2d 666 (11th Cir. 1985)).

In the present case, the Bankruptcy Court issued its decision holding Alex's debt to Cristina non-dischargeable on May 26, 2010.  Alex filed a timely appeal of that decision in this Court on June 6, 2010; his appeal was docketed on June 7, 2010 (document #1).  Alex then filed his supporting brief over a month later, on August 19, 2010 (document #10).  He did not submit any motions for an extension of time.[1]  On August 30, 2010, Cristina filed a motion to strike

---

[1] Attorney Baker blames this delay on his own misunderstanding of the procedures of this Court.  Appellant's Resp. Mot. Strike/Dismiss 1 (document #15).  He writes: "In the experience of Alex's undersigned attorney, the judges of this court routinely issue Scheduling Orders . . . .  Based on that experience, Alex's undersigned attorney was awaiting the entry of such an order in this case.  When one was not forthcoming in this case, the undersigned essentially took the initiative and filed a brief in order to keep the process moving."  Id.

Alex's brief on the grounds that it was not timely submitted (document #11); she also filed a motion to dismiss Alex's appeal based, in part, on the same grounds (document #12). I GRANT Cristina's motions to dismiss Alex's appeal for failure to comply with Rule 8009 without even addressing the merits (or lack thereof) of the appeal itself.

  **B.**   **Frivolous Appeal**

In addition to seeking dismissal of Alex's appeal, Cristina also asks for sanctions. See Appellee's Br. Support Mot. Sanctions (document #18). Federal Rule of Bankruptcy Procedure 8020 ("Rule 8020") permits a district court to award just damages and single or double costs to the appellee if it determines that an appeal from a Bankruptcy Court decision is frivolous. Fed. R. Bankr. P. 8020.[2] While there is no set formula for determining whether an appeal is frivolous, courts in the First Circuit generally consider whether the appellant acted in bad faith,[3] and whether the argument presented on appeal is meritless in toto or only in part. In re Maloni, 282 B.R. 727, 734 (B.A.P. 1st Cir. 2002). Other factors to be considered are whether the appellant's argument effectively addresses the issues on appeal, fails to cite any authority, cites inapplicable authority, makes unsubstantiated factual assertions, asserts bare legal conclusions, or misrepresents the record. Id. In particular, the court may impose sanctions if the appellant raises

---

[2] Rule 8020 essentially adopts Federal Rule of Appellate Procedure 38, which states: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38.

[3] A finding of bad faith is generally not *required* to impose sanctions under Rule 8020. Maloni, 282 B.R. at 734. "Generally, sanctions will be imposed regardless of the motive of the appellant because the rule seeks to compensate an appellee who has had to waste time defending a meritless appeal." Id. (quoting 10 Lawrence P. King, Collier on Bankruptcy ¶ 8020.6).

issues that are contradicted by long-established precedent or by a case decided while the appeal is pending. In re Great Rd. Serv. Cent. Inc., 304 B.R. 547, 552 (B.A.P. 1st Cir. 2004).[4]

In the present case, Alex's appeal is frivolous *in toto*, as each and every one of the arguments he presents is completely unsupported by fact or law.

### 1. Subject Matter Jurisdiction

Alex claims the Bankruptcy Court lacked subject matter jurisdiction to determine the dischargeability of his debt to Cristina as a result of the Assault because Cristina has not yet reduced her tort claims against Alex to a judgment. Appellant's Br. 7 (document #10). This argument ignores the plain, unambiguous meaning the Bankruptcy Code assigns to the word "claim" in 11 U.S.C. § 101(5)(A).[5]

The governing federal statute and Bankruptcy Code define a "debt" as a "liability on a claim," which in turn is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A); see also Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35-37 (1st Cir. 2009) (stating that Congress intended to give the term "claim" the "broadest available definition," and holding that even a disputed claim to an equitable remedy not yet reduced to judgment is a "claim" within the meaning of the Bankruptcy Code if a monetary payment is an alternative for the equitable remedy). Therefore, in the case at

---

[4] In addition to determining that the appeal is frivolous, the district court must also ensure that the procedural requirements of Rule 8020 are met. In re Gavin, 319 B.R. 27, 34 (B.A.P. 1st Cir. 2004) (citing In re Maloni, 282 B.R. 727, 734 (B.A.P. 1st Cir. 2002). Specifically, there must have been a separately filed motion by the appellee.

[5] In fact, she has not even filed these claims yet.

bar, the Bankruptcy Court was not precluded from determining the dischargeability of Alex's yet unrealized debt to Cristina simply because she had not yet reduced her tort claims to judgment.

Second, his argument that the statute of limitations on Cristina's tort claims had run also ignores the express provisions of the Bankruptcy Code. Alex is correct that ordinarily there is a three-year statute of limitations on tort actions. See Mass. Gen. Laws ch. 260, § 2A. However, as the Bankruptcy Court noted, sections 108© and 362(c)(2) of the Bankruptcy Code toll the statute of limitations for such actions during the pendency of a debtor's bankruptcy proceedings. Bankr. Ct. Decision 11; see also 11 U.S.C. §§ 108©, 362©.[6] Because the dischargeability of Alex's debt to Cristina is still being litigated, the statute of limitations for the underlying tort claims giving rise to that debt continue to be tolled, and therefore Cristina is not yet barred from bringing those claims.[7]

---

[6] Section 108© provides, in relevant part:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law… fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor… and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of –
>
> The end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108©. Likewise, Section 362(c)(2) provides that in a Chapter 7 case, the automatic stay set forth in section 108© continues until the time at which a discharge is granted or denied. Id. § 362(c)(2)©.

[7] Alex essentially argues that Buker v. Nat'l Mgmt. Corp., 16 Mass. App. Ct. 36 (1983), holds that a creditor's tort claims are not tolled during the pendency of the debtor's bankruptcy proceeding, and that this one case should govern over the express provisions of the Bankruptcy Code contained in Sections 108© and 362(c)(2). However, Buker was decided before the Bankruptcy Code was in effect. Moreover, what Buker actually held is that a *debtor's* tort claims are not tolled during the *entire* period that his assets are under the control of a trustee in bankruptcy, but only for two years after the debtor was adjudicated bankrupt, provided that the claims were not already time-barred at the time the debtor filed for bankruptcy. 16 Mass. App. Ct. at 40-41. The court reasoned that one purpose of the bankruptcy statutes is to render to the creditors of an insolvent debtor "all for which they may

Third, Alex's contentions that Cristina's tort claims were waived via the Stipulation and/or barred by res judicata is based on a distinction that has no bearing on the case at bar. He argues that Cristina's "tort-based issues" were presented to the Probate Court during the divorce proceedings, and that the judge took them into consideration when awarding spousal support, such that he "compensated her for them." Id. at 12. However, the Probate Court is a court of limited jurisdiction, which does not have the authority to decide tort claims. See Mass. Gen. Laws ch. 215, §§ 3, 6. In fact, the SJC has already rejected Alex's argument in a case quite similar to the one at bar. See Heacock, 402 Mass. at 21-22.

In Heacock, the defendant asserted res judicata as a defense against his former wife's tort action arising from domestic abuse, arguing that the abuse had been addressed previously in their divorce proceeding. Id. The SJC overturned a dismissal of the case, holding that claim and issue preclusion did not apply. Id.

Moreover, nothing in the Stipulation waives the instant issues. First, Alex takes issue with the fact that the Statement "was prepared by [Cristina's] attorney, who was not particularly open to modification of his work, and the 'admissions' made in it all were taken from the amended complaint, not from depositions (there were none) or other discovery." Appellant Br. 16. He continues by saying that the facts admitted in the Statement are in conflict with the

---

reasonably hope," and that "[t]olling the statute of limitations during the entire period of bankruptcy would provide 'bonus time' to the debtor of no apparent benefit to his creditors." Id. Thus, if the holding of Buker can be stretched to provide *any* guidance for the determination of the present case, it is that the statute of limitations for Cristina's tort claims should be tolled, because the Bankruptcy Code should be construed in favor of those to whom the debtor is indebted.

     Alex alternatively insists that it is "arguable" that determination of Cristina's tort claims is now time-barred because a Massachusetts trial court might decline to apply Section 108©, and rather, under the doctrine of laches, hold that she is not entitled to tolling because of unreasonable delay on her part. Appellant Br. 10-11. However Alex, admittedly, cites no cases in which a Massachusetts court has declined to apply Section 108© on the basis of laches or any other ground, nor does he set forth a persuasive argument for why a Massachusetts court might do so in the present case. See id.

triable issues of fact and law also set forth in the Statement, and with Alex's answer to the original complaint. Id. at 17. This argument is unpersuasive. If counsel was concerned that the material contained in the Statement was inaccurate in any way, or that contrary information could be revealed via depositions or other discovery, he should not have signed the Statement on behalf of his client. He cannot now argue that the Statement is not binding against his client simply because at the time he signed it he was uneasy about doing so. Alex's counsel knew, or certainly should have known, that the stipulated facts contained in the Statement were deemed admitted, and that those admissions would supersede the pleadings. In fact, the Statement contained a section setting forth as much. See JPTS APP2 103.

Second, Alex contends that Cristina has not shown that she has actually suffered an injury because "[p]aragraphs 9 through 12 of the complaint do not allege any injury physical or otherwise – only that there was an affray" and that "the joint pre-trial statement seems merely to quote the amended complaint, the material allegations of which, in answer to the original complaint were denied." Appellant's Br. 18-19. However, the Statement clearly sets forth that "[Alex] intended to cause and **did cause Cristina physical harm and pain and emotional fright** and did cause Cristina such physical harm that she was caused to seek and obtain medical care for her injuries and did cause her such emotional harm that she was cased [sic] to seek and obtain care for her emotional condition." JPTS at APP2 97 (emphasis added). If that is not an admission of injury, it is hard to imagine what could be.

Third, Alex claims that the admissions contained in the Statement do not necessarily establish that Cristina's injuries were willfully or maliciously inflicted. He argues that the fact that he admitted to having pled sufficient facts to be found guilty of assault and battery with a

dangerous weapon and assault and battery does not prove that he acted willfully or maliciously; he asserts that reckless or negligent behavior could also have triggered his conviction. However, Alex admitted that he "**purposefully struck** Cristina with great force, **grabbed Cristina by the throat and struck her head repeatedly** against the interior wall of the premises. . . and **threw Cristina with such force onto a table that the table was caused to be broken**." JPTS at APP2 97 (emphasis added). These are willful actions.

Alternatively, Alex argues that "there are other possible explanations" for Cristina's injuries; he imagines, for example, "it is possible that Alex believed he was defending himself." Appellant's Br. 21. However, Alex never affirmatively argued at the hearing before the Bankruptcy Court or in the memorandum opposing summary judgment that he submitted to the Bankruptcy Court that Alex was acting in self defense.[8] He claims only that it "is not beyond the realm of possibility." Id. Nothing in the record suggests that Alex was acting in self-defense. Alex cannot now avoid summary judgment by offering "conclusory allegations, improbable inferences, [or] unsupported speculation in the place of genuine, trialworthy issues." Medina-Munoz, 896 F.2d at 8. Summary judgment was warranted.

In addition, he asserts that the admissions contained in the Statement are insufficient to establish willfulness or maliciousness. All of these arguments fail.

Fourth, Alex's absurd assertion that the admissions contained in the Stipulation were insufficient grounds for summary judgment are so ridiculous that one can only imagine that they were made in bad faith. It boggles the mind to think that Alex could admit, as a fact not

---

[8] Alex seems to suggest that he could not affirmatively set forth this argument before the Bankruptcy Court without an evidentiary hearing. He argues: "It is not beyond the realm of possibility that after hearing live testimony, and not relying exclusively on the joint pre-trial statement, the court would find that the injury (if one could be proven) was recklessly or negligently inflicted." Appellant's Br. 21.

requiring proof, that he "intended to cause and did cause Cristina physical harm and pain," and then later argue that there were questions as to injury and intent precluding summary judgment. If there was ever a case to impose sanctions, this would be the one.[9]

The court may award damages pursuant to Rule 8020 either in the form of a lump-sum monetary penalty or attorney's fees. Great Road, 304 B.R. at 553. A lump-sum amount may be whatever amount the court concludes is warranted. Id. If the court awards attorney's fees, the court may: 1) remand the matter to the Bankruptcy Court to determine the amount; or 2) make an award based on the appellee's submissions. Id. Single or double costs are calculated according to the provisions of Federal Rule of Bankruptcy Procedure 8014. See Fed. R. Bankr. P. 8014. Cristina contends that "Alex's appeal is utterly baseless and has caused Cristina to incur significant unwarranted expenses." Appellee's Br. in Support of Mot. for Sanctions 23 (document #20). Specifically, Cristina asserts that she has spent $23,629.75 on legal services in connection with this appeal. Aff. Supp. Mot. Sanctions ¶ 13 (document #19). She requests no less than $16,221.00 in sanctions. Id. ¶ 15. I agree and remand the case back to the Bankruptcy Court for the determination.

## V. CONCLUSION

I **DISMISS** Alex's appeal for failure to comply with Bankruptcy Rule 8009 (and hence **GRANT** Cristina's motions to strike Alex's brief **(document #11)** and dismiss his appeal **(document #12)** for failure to comply with Bankruptcy Rule 8009). Finally, I **GRANT**

---

[9] Appellate courts should give considerable deference to a bankruptcy court's determination of appropriate fee awards because "the bankruptcy judge is in the best position to gauge the interplay of factors and make delicate judgment calls anent fee awards." Great Road, 304 B.R. at 552. Although the Bankruptcy Court deferred the imposition of sanctions pending the outcome of this appeal, it is very telling that the Bankruptcy Court was so willing to issue sanctions that it gave Attorney Baker an opportunity to show cause, as Federal Rule of Bankruptcy Procedure 9011© required it to. See Bankr. Ct. Decision 19-20; see also Fed. R. Bankr. P. 9011©.

Cristina's motion for sanctions for damages and costs **(document #18)**, because Alex's appeal is frivolous, and Cristina is deserving of remuneration for having to defend against it. I hereby **REMAND** this matter to the Bankruptcy court to determine the amount.

**SO ORDERED.**

**Date: March 21, 2011**     */s/ Nancy Gertner*
              **NANCY GERTNER, U.S.D.J.**